# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BUTTERBALL, LLC, a North Carolina limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | **Case No.** 16-cv-8657 |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| GIFT CHECK PROGRAM 2016, INC. , an Illinois corporation, | ) ) | |
| Defendants. | | |

## VERIFIED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE AND OTHER RELIEF

Plaintiff Butterball, LLC, a North Carolina limited liability company, ("Butterball"), by and through Thadford A. Felton, David B. Goodman and Courtney Adair, Greensfelder, Hemker & Gale, P.C. of counsel, for its Verified Complaint for Preliminary and Permanent Injunctive and Other Relief against Defendant Gift Check Program 2016, Inc., an Illinois corporation, ("Gift Check"), alleges and states as follow:

## NATURE OF THE ACTION

This is an action for trademark infringement and unfair competition pursuant to 15 U.S.C. §§ 1114 and 1125; violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.*); violation of the Illinois Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.*); and trademark infringement and unfair competition under Illinois common law; and seeks injunctive relief and damages against Defendant.

## PARTIES

1.      Plaintiff Butterball, LLC is a North Carolina limited liability company having its principal place of business at 1 Butterball Lane, Garner, North Carolina 27529.  Butterball is the largest producer of turkey products in the United States and its products are distributed throughout the United States.  As discussed in more detail below, the vast majority of Butterball's products are distributed in conjunction with the BUTTERBALL family of trademarks.

2.      On information and belief, Defendant Gift Check Program 2016, Inc. is an Illinois corporation with a place of business at 1400 Opus Pl., Suite 810, Downers Grove, Illinois 60515. The registered agent of Defendant is Richard D. Wirth at the aforementioned address.

## JURISIDICTION AND VENUE

3.      This is an action arising in part under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Illinois statutory and common law.

4.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 1367(a).

5.      This Court has personal jurisdiction over Defendant Gift Checks because Defendant resides in this District.

6.      Venue is proper in this Court under the provisions of 28 U.S.C. § 1391(a) and 1391(b) because Defendant resides in this District and a substantial part of the events giving rise to Butterball's claims occurred and continue to occur in this State and District, and Defendants are subject to personal jurisdiction in this State.

2

## FACTUAL BACKGROUND

### Butterball's Trademark Rights

7.      Butterball is the owner of all right, title and interest in a family of common

law and registered trademarks and service marks for or incorporating BUTTERBALL,

including the U.S. Trademark Registrations identified below (herein, collectively and/or

individually, as the context dictates, the "BUTTERBALL Marks"):

| Mark | Reg. No. (Serial No.) | Goods / Services |
|---|---|---|
| BUTTERBALL | 4,337,324 | Dressed poultry; fresh turkey products, namely, poultry parts, stuffed whole turkey, turkey breast, ground turkey, ground turkey burgers and turkey sausages |
| BUTTERBALL | 4,369,625 | Deep fat fryers |
| BUTTERBALL and Design | 4,365,635 | Deep fat fryers |
| BUTTERBALL | 4,436,997 | Processed turkey-based snack food |
| BUTTERBALL and Design | 4,436,996 | Processed turkey-based snack food |
| BUTTERBALL | 4,103,106 | Marinades; seasonings; spices |
| BUTTERBALL and Design | 4,103,105 | Marinades; seasonings; spices |

| Mark | Reg. No. (Serial No.) | Goods / Services |
|---|---|---|
| BUTTERBALL | 3,464,317 | Soups |
| BUTTERBALL | 2,687,114 | Broth |
| BUTTERBALL | 1,400,556 | Poultry processed meats including salami, pastrami, ham, bologna and breast of turkey |
| BUTTERBALL and Design | 1,151,836 | Poultry and poultry parts including frozen dressed whole turkey, stuffed turkey, and frozen turkey breast |
| BUTTERBALL | 4,467,422 | Computer application software for mobile devices featuring recipes and cooking tips |
| BUTTERBALL ARTISAN SEASONED | 4,418,703 | Products made from turkey, namely, deli meats, ham, salami, pastrami, and bologna |
| BUTTERBALL COOKBOOK PLUS | 4,456,222 | Computer application software for mobile devices featuring recipes and cooking tips |
| BUTTERBALL COOKBOOK PLUS and Design | 4,456,223 | Computer application software for mobile devices featuring recipes and cooking tips |
| BUTTERBALL EVERY DAY | 4,637,915 | Fresh turkey products, namely, poultry parts, turkey breast, ground turkey, ground turkey burgers and turkey sausages; products made from turkey, namely, smoked sausages, deli meats, ham, salami, bologna, hot dogs, and pastrami |

4

| Mark | Reg. No. (Serial No.) | Goods / Services |
|---|---|---|
| BUTTERBALL EVERY DAY | 4,667,677 | Turkey bacon |
| BUTTERBALL EVERY DAY CHEF SELECTS | 4,464,017 | Dressed poultry; fresh turkey products, namely, poultry parts, stuffed whole turkey, turkey breast, ground turkey, ground turkey burgers and turkey sausages, smoked and processed turkey-based products, namely, snack food, deli meats, turkey breast, ham, salami, sausage, hot dogs, bacon and pastrami; broth |
| BUTTERBALL HEARTLAND | 4,777,832 | Fresh and frozen poultry products, namely, fresh and frozen poultry parts, turkey breast, chicken breast, ground turkey, ground chicken, ground turkey burgers, ground chicken burgers, turkey sausages and chicken sausages; processed poultry-based products, namely, smoked and processed meats made from turkey or chicken, namely, turkey breasts, chicken breast, ham, salami, sausage, hot dogs, and pastrami; smoked hams; cooked hams; fresh pork products; and processed pork products, namely, sausage and deli meats |
| BUTTERBALL TURKEY TODAY | 4,641,952 | Providing information, advice, tips and recipes in the fields of cooking |

8.     Butterball has widely and extensively advertised, promoted, and sold products and services under the BUTTERBALL Marks nationwide for decades.  As a result, the public has come to recognize and does recognize the BUTTERBALL Marks as

being solely associated with Butterball and as an indication of Butterball's high quality products and services.

9. Butterball derives substantial goodwill, common law rights, and value from its ownership and use of the BUTTERBALL Marks.

10. The consumer goodwill associated with the BUTTERBALL Marks is one of Butterball's most valuable assets. Accordingly, the integrity of the BUTTERBALL Marks is extremely important to Butterball, and crucial to the continued vitality and growth of Butterball's business.

**Butterball's Exclusive Gift Card/Check Provider**

11. Butterball has entered into an agreement ("Agreement") with Array Enterprises, Inc. ("Array") pursuant to which Array has agreed to perform certain services for Butterball, namely to offer Butterball-branded gift checks and gift cards, for which Butterball receives a royalty based on the volume of sales.

12. The "Butterball Gift Checks" are powerful tools to use for employee gifts and customer loyalty and marketing programs. Similarly, non-profit organizations, food banks, and healthy eating initiatives have found that the Butterball gift checks are a convenient and affordable addition to their programs.

13. Pursuant to the Array Agreement, Array is authorized to use certain BUTTERBALL Marks, subject to Butterball's review and approval. All use of the BUTTERBALL Marks by Array inure solely to the benefit of Butterball.

14.   A screenshot from Array's Butterball Gift Check Program website from September 1, 2016 is shown below:



  

15.   The Butterball gift card/checks issued pursuant to the Array Agreement do not have an expiration date and are accepted at stores nation-wide.

16.   Butterball polices the marketplace for unauthorized use of the BUTTERBALL Marks and has sent cease and desist letters to entities that are using the

7

BUTTERBALL Marks without authorization. Butterball's efforts have resulted in the cessation of unauthorized use.

**<u>Defendant's Wrongful Conduct</u>**

17.     Defendant Gift Check offers gift checks, specializing in holiday gift checks.

18.     Screenshots from Defendant Gift Check's website as it existed as of September 1, 2016 are below:



(annotated)



(annotated)

9



(annotated)

19.     On September 2, 2016, Gift Check modified its website to remove the Butterball logo.   However, Gift Check's website continues unauthorized and confusing use of the BUTTERBALL Marks.  Screenshots of Gift Check's website as it existed on September 2, 2016 are below:



(annotated)



(annotated)

10



(annotated)



(annotated)

**Easy for the recipient!**

- Recipient may choose a Butterball turkey, or any turkey, ham or even the pumpkin pies!
- Flexible to meet special dietary restriction – recipient chooses brand and grocery items
- Easy to use – simply take the turkey gift check to virtually any favorite grocery stores nationwide
- Present gift checks at register and the whole amount will be applied to their grocery purchase – easy as 1,2,3!

(annotated)

20.     As shown in the screenshots above, Gift Check has used and is currently using the BUTTERBALL Marks without authorization and in multiple and conspicuous locations on its website.

21.     Gift Check's unauthorized use of the BUTTERBALL Marks has caused, and will continue to cause, confusion in the marketplace.

22.     For instance, Butterball's authorized gift card/check seller, Array, has received multiple communications wherein the consumer involved confused Gift Check's goods and services with those of Array.

23.     Further, in at least two instances, consumers were about to purchase gift checks from Gift Check, only to discover that Gift Check was not the authorized Butterball gift check seller.  Upon information and belief, consumers have completed purchases with Gift Check under the mistaken belief that they were purchasing gift checks from Butterball's authorized gift check seller.

24.     Consumer confusion is exacerbated by Gift Check employees soliciting Butterball's authorized vendor's customers.  Upon information and belief, Gift Check uses marketing material that also contains the BUTTERBALL Marks.

25.     Gift Check does not need to use any BUTTERBALL Mark, or even the name

"Butterball" on its website, marketing material, or forms. For example, at least one version of Gift Check's hard-copy order form does not use BUTTERBALL Marks and, likewise, Gift Check's checks refer to "any brand turkey" and no specific brand, as shown below. As such, Gift Check's use of the BUTTERBALL Marks on its website and marketing material is for no reason other than to trade off the goodwill associated with the BUTTERBALL Marks.



(annotated)

26. Gift Check's gift check program competes directly with Array's program, offering the same goods and services to substantially the same customers, utilizing the same or similar channels of commerce.

27. Upon information and belief, Gift Check's principals formed and operated similar gift check operations in 2014 and 2015 using entities named Gift Check Program 2014, Inc. and

Gift Check Program, 2015, Inc.

28.     Upon information and belief, neither Gift Check Program 2014, Inc. nor Gift Check Program 2015, Inc. utilized the BUTTERBALL Marks.

29.     Upon information and belief, Gift Check's principals are some of the same principals involved in another entity, The Quest Group, Inc. ("Quest"), that sold Butterball-branded gift checks prior to 2013.

30.     Quest previously served as Butterball's authorized gift check vendor under a written agreement that ended in 2013.  Accordingly, the principals of Gift Check are aware that a license is needed to utilize the BUTTERBALL Marks in conjunction with gift cards/checks.

31.     Rather than respect Butterball's trademark rights, Gift Check, by and through its principals, knowingly selected and used the BUTTERBALL Marks without Butterball's permission for financial benefit.  Gift Check's actions have confused, and threaten to continue to confuse, the consuming public, as well as damage Butterball and its licensee, Array.  As a result, Defendant Gift Check has demonstrated a blatant disregard for Butterball's trademark rights.

32.     Upon information and belief, consumers are purchasing gift checks from Defendant Gift Check under the mistaken and confused belief that they are purchasing from Butterball's authorized seller of gift cards/checks, Array.

33.     Upon information and belief, Gift Check's unauthorized use of the BUTTERBALL Marks is causing confusion as to source, sponsorship, endorsement or association.

34.     Because of its unauthorized use of the BUTTERBALL Marks, Defendant Gift

14

Checks is one of the entities to whom Butterball sent a cease and desist letter. Butterball's first letter was sent August 9, 2016. A copy of the Aug. 9, 2016 letter to Gift Check is filed herewith as **Exhibit A**.

35.     Defendant responded, but refused to remove and stop using Butterball's marks. A copy of Defendant's response is filed herewith as **Exhibit B**.

36.     Butterball was forced to once again write Defendant in an attempt to stop the infringing and misleading use of the BUTTERBALL Marks. A copy of Butterball's August 25, 2016 letter to Gift Check is filed herewith as **Exhibit C**.

37.     Defendant again refused to stop using Butterball's marks, but provided vague commitments to stop using the BUTTERBALL Marks at some point in the future. Given the damages Gift Check's actions have caused, and the ongoing threat and harm to Butterball's good will associated with the BUTTERBALL Marks, this was unacceptable to Butterball. Moreover, even if Gift Check removed a portion of the BUTTERBALL Marks from its materials, any remaining use of the BUTTERBALL Marks will continue to cause confusion. A copy of Gift Check's August 31, 2016 communication is filed herewith at **Exhibit D**.

38.     Butterball responded on September 1, 2016, as shown in Exhibit E filed herewith.

39.     Further, one of Gift Check's principals wrote directly to Butterball and contradicted early messages from Gift Check's attorneys, leaving Butterball wondering if Gift Check was ever going to stop use of the BUTTERBALL Marks, how it would stop, and when. A copy of Gift Check's communication to Butterball is attached hereto as **Exhibit F**.

40.     Gift Check did modify its website on September 2, 2016. However, the modified

website, as shown above, continues the unauthorized and confusing use of the BUTTERBALL Marks.

41.     Gift Check's actions have caused and will continue to cause Butterball to lose sales and incur other damages in an amount not yet determined.

## COUNT I

### Federal Trademark Infringement – 15 U.S.C. § 1114

42.     Butterball realleges and incorporates by reference the foregoing paragraphs 1 through 41 as paragraph 42.

43.     Butterball owns valid and enforceable rights in the BUTTERBALL Marks.

44.     Defendant has, without Butterball's consent, used and continues to use the BUTTERBALL Marks in connection with the marketing, offering for sale, and sale of services and products in connection with which such use is likely to cause confusion, mistake, or deception in consumers as to the origin, sponsorship, affiliation, and/or nature of Defendant's services and products in violation of 15 U.S.C. § 1114.

45.     As a proximate cause of Defendant's infringement, Defendant has or will receive substantial profits to which it is not entitled, and Butterball has suffered or will suffer actual monetary damages, including, without limitation, lost profits, impairment of the value of the BUTTERBALL Marks, and loss of goodwill.

46.     Butterball is entitled to damages in an amount to be proven at trial under 15 U.S.C. § 1117.

47.     Defendant has acted with full knowledge of Butterball's rights in the

16

BUTTERBALL Marks and with the intention to usurp such rights. Defendant's actions are intentional, willful, and are calculated to cause confusion, to cause mistake, or to deceive. As a result, Defendant is liable to Butterball for treble damages and attorneys' fees under 15 U.S.C. § 1117.

48.     Defendant's actions have caused and will continue to cause damages and irreparable harm to Butterball unless enjoined by this Court. Butterball has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Butterball requests the following relief:

A.     An order finding that temporarily, preliminarily and permanently enjoins Defendant, its officers, agents, representatives, employees, and those persons acting in concert or participation with Defendant, from using the BUTTERBALL Marks or any other mark, word, name, symbol, or slogan that is likely to cause confusion, mistake, or deception with respect to the BUTTERBALL Marks;

B.     Order Defendant to pay all actual damages suffered by Butterball as a result of Defendant's infringing activities, pursuant to 15 U.S.C. § 1117;

C.     Order Defendant to disgorge all profits attributable to Defendant's infringing activities, pursuant to 15 U.S.C. § 1117;

D.     Grant Butterball a monetary award to account for Defendant's unlawful conduct, including compensatory and punitive damages;

E.     Grant Butterball treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117;

17

F.      Order that Defendants pay the costs of this action pursuant to 15 U.S.C. § 1117;

G.      Order that all articles bearing the infringing mark be delivered up and destroyed, pursuant to 15 U.S.C. § 1118;

H.      Grant any further equitable relief in order to enjoin the harm caused to Butterball;

I.      Grant Butterball prejudgment and post-judgment interest; and

J.      Grant such other and further relief as this Court deems just and equitable.

## COUNT II

### Unfair Competition and False Designation of Origin – 15 U.S.C. § 1125

49.      Butterball realleges and incorporates by reference the foregoing paragraphs 1 through 41 as paragraph 49.

50.      Defendant's use of the BUTTERBALL Marks in connection with the marketing, offering for sale, and sale of their services and products has caused and is likely to continue to cause confusion, or to cause mistake, or to deceive consumers into believing that Defendant and Butterball are affiliated, or that certain services and products offered by Defendant, namely gift checks, are made by, sponsored by, approved by, originate with, or are affiliated with Butterball, in violation of 15 U.S.C. § 1125.

51.      Defendant has competed unfairly with Butterball and has realized unjust profits as a result of their unfair competition.

52.      Defendant has acted with full knowledge of Butterball's rights in the BUTTERBALL Marks and with the intention to usurp such rights. Defendant's actions are intentional, willful, and were calculated to cause confusion, to cause mistake, or to deceive.

18

53. As a result of Defendant's unfair competition, Butterball has suffered or will suffer damages, including lost sales, lost profits, and lost goodwill.

54. Butterball is entitled to damages in an amount to be proven at trial under 15 U.S.C. § 1117.

55. Defendant's actions have caused irreparable injury to Butterball's reputation and goodwill and, unless enjoined, Defendant will continue its acts of unfair competition. Butterball has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Butterball requests the following relief:

A. An order finding that temporarily, preliminarily and permanently enjoins Defendant, its officers, agents, representatives, employees, and those persons acting in concert or participation with Defendant, from using the BUTTERBALL Marks or any other mark, word, name, symbol, or slogan that is likely to cause confusion, mistake, or deception with respect to the BUTTERBALL Marks;

B. Order Defendant to pay all actual damages suffered by Butterball as a result of Defendant's infringing activities, pursuant to 15 U.S.C. § 1117;

C. Order Defendant to disgorge all profits attributable to Defendant's infringing activities, pursuant to 15 U.S.C. § 1117;

D. Grant Butterball a monetary award to account for Defendant's unlawful conduct, including compensatory and punitive damages;

E. Grant Butterball treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117;

F.      Order that Defendants pay the costs of this action pursuant to 15 U.S.C. § 1117;

G.      Order that all articles bearing the infringing mark be delivered up and destroyed, pursuant to 15 U.S.C. § 1118;

H.      Grant any further equitable relief in order to enjoin the harm caused to Butterball;

I.      Grant Butterball prejudgment and post-judgment interest; and

J.      Grant such other and further relief as this Court deems just and equitable.

## COUNT III

**Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act**

56.     Butterball realleges and incorporates by reference the foregoing paragraphs 1 through 41 as paragraph 56.

57.     Defendant's actions complained of herein constitute unfair trade practices in violation of 815 ILCS 505/1 *et seq.* in that Defendant's conduct causes likelihood of confusion with, or misunderstanding as to, affiliation, connection or association with Butterball and its licensee Array in connection with the BUTTERBALL Marks.

58.     Because Defendant had actual and constructive notice of Butterball's prior use and licensing of the BUTTERBALL Marks before Defendant began using the BUTTERBALL Marks, Defendant willfully engaged in unfair and deceptive trade practices in violation of Illinois law.

59.     As a result of Defendant's conduct, Butterball is likely to suffer, and has in fact already suffered, commercial damage and pecuniary harm.

## PRAYER FOR RELIEF

WHEREFORE, Butterball requests the following relief:

A.      An order finding that temporarily, preliminarily and permanently enjoins Defendant, its officers, agents, representatives, employees, and those persons acting in concert or participation with Defendant, from using the BUTTERBALL Marks or any other mark, word, name, symbol, or slogan that is likely to cause confusion, mistake, or deception with respect to the BUTTERBALL Marks;

B.      Order Defendant to pay all actual damages suffered by Butterball as a result of Defendant's infringing activities;

C.      Order Defendant to disgorge all profits attributable to Defendant's infringing activities;

D.      Grant Butterball a monetary award to account for Defendant's unlawful conduct, including compensatory and punitive damages;

E.      Grant Butterball treble damages and attorneys' fees;

F.      Order that Defendants pay the costs of this action;

G.      Order that all articles bearing the infringing mark be delivered up and destroyed;

H.      Grant any further equitable relief in order to enjoin the harm caused to Butterball;

I.      Grant Butterball prejudgment and post-judgment interest; and

J.      Grant such other and further relief as this Court deems just and equitable.

## COUNT IV

### Violation of the Illinois Deceptive Trade Practices Act

60. Butterball realleges and incorporates by reference the foregoing paragraphs 1 through 41 as paragraph 60.

61. Defendant's actions complained of herein constitute unfair trade practices in violation of 815 ILCS 510/1 *et seq.* in that Defendant's conduct causes likelihood of confusion with, or misunderstanding as to, affiliation, connection or association with Butterball and its licensee Array in connection with the BUTTERBALL Marks.

62. Because Defendant had actual and constructive notice of Butterball's prior use and licensing of the BUTTERBALL Marks before Defendant began using the BUTTERBALL Marks, Defendant willfully engaged in unfair and deceptive trade practices in violation of Illinois law.

63. As a result of Defendant's conduct, Butterball is likely to suffer, and has in fact already suffered, commercial damage and pecuniary harm.

## PRAYER FOR RELIEF

A. An order finding that temporarily, preliminarily and permanently enjoins Defendant, its officers, agents, representatives, employees, and those persons acting in concert or participation with Defendant, from using the BUTTERBALL Marks or any other mark, word, name, symbol, or slogan that is likely to cause confusion, mistake, or deception with respect to the BUTTERBALL Marks;

B. Order Defendant to pay all actual damages suffered by Butterball as a result of Defendant's infringing activities;

C. Order Defendant to disgorge all profits attributable to Defendant's infringing

22

activities;

D.  Grant Butterball a monetary award to account for Defendant's unlawful conduct, including compensatory and punitive damages;

E.  Grant Butterball treble damages and attorneys' fees;

F.  Order that Defendants pay the costs of this action;

G.  Order that all articles bearing the infringing mark be delivered up and destroyed;

H.  Grant any further equitable relief in order to enjoin the harm caused to Butterball;

I.  Grant Butterball prejudgment and post-judgment interest; and

J.  Grant such other and further relief as this Court deems just and equitable.

## COUNT V

### Common Law Trademark Infringement

64.  Butterball realleges and incorporates by reference the foregoing paragraphs 1 through 41 as paragraph 64.

65.  Butterball is the owner of valid common law rights in the BUTTERBALL Marks, which it or its predecessors-in-interest have used continuously and in connection with the provision of various products and services, some of which are described in the above chart, long before Defendant's adoption and first use of the BUTTERBALL Marks.

66.  Defendant's actions complained of herein are likely to cause confusion, mistake or deception among consumers as to an affiliation, connection, or association of Defendant's goods and services with Butterball and the BUTTERBALL Marks, and as to the origin, sponsorship or approval of Defendant and their goods and services in violation of Illinois common law.

67. Defendant's unauthorized conduct has also deprived and will continue deprive Butterball of the ability to control the consumer perception of its goods provided in connection with the BUTTERBALL Marks, placing the valuable reputation and goodwill of Butterball in the hands of Defendant, over whom Butterball has no control.

68. Because Defendant had actual and constructive knowledge of Butterball's prior use of and rights in the BUTTERBALL Marks before Defendant began using the BUTTERBALL Marks, Defendant willfully engaged in common law trademark infringement in violation of Illinois law.

69. As a result of Defendant's conduct, Butterball is likely to suffer, and has in fact already suffered, commercial damage and pecuniary harm.

## PRAYER FOR RELIEF

WHEREFORE, Butterball requests the following relief:

A. An order finding that temporarily, preliminarily and permanently enjoins Defendant, its officers, agents, representatives, employees, and those persons acting in concert or participation with Defendant, from using the BUTTERBALL Marks or any other mark, word, name, symbol, or slogan that is likely to cause confusion, mistake, or deception with respect to the BUTTERBALL Marks;

B. Order Defendant to pay all actual damages suffered by Butterball as a result of Defendant's infringing activities;

C. Order Defendant to disgorge all profits attributable to Defendant's infringing activities;

D.     Grant Butterball a monetary award to account for Defendant's unlawful conduct, including compensatory and punitive damages;

E.     Grant Butterball treble damages and attorneys' fees;

F.     Order that Defendants pay the costs of this action;

G.     Order that all articles bearing the infringing mark be delivered up and destroyed;

H.     Grant any further equitable relief in order to enjoin the harm caused to Butterball;

I.     Grant Butterball prejudgment and post-judgment interest; and

J.     Grant such other and further relief as this Court deems just and equitable.

## COUNT VI

### Common Law Unfair Competition

70.     Butterball realleges and incorporates by reference the foregoing paragraphs 1 through 41 as paragraph 70.

71.     Defendant's actions complained of herein constitute unfair competition in violation of Illinois common law, as the aforementioned acts constitute an intentional misappropriation of Butterball's BUTTERBALL Marks, reputation, and commercial advantage.

72.     As a result of Defendant's aforementioned conduct, Butterball has suffered substantial damage and irreparable harm constituting an injury for which Butterball has no adequate remedy at law.  Unless this Court enjoins Defendant's conduct, Butterball will continue to suffer irreparable harm.

### PRAYER FOR RELIEF

WHEREFORE, Butterball requests the following relief:

25

A.      An order finding that temporarily, preliminarily and permanently enjoins Defendant, its officers, agents, representatives, employees, and those persons acting in concert or participation with Defendant, from using the BUTTERBALL Marks or any other mark, word, name, symbol, or slogan that is likely to cause confusion, mistake, or deception with respect to the BUTTERBALL Marks;

B.      Order Defendant to pay all actual damages suffered by Butterball as a result of Defendant's infringing activities;

C.      Order Defendant to disgorge all profits attributable to Defendant's infringing activities;

D.      Grant Butterball a monetary award to account for Defendant's unlawful conduct, including compensatory and punitive damages;

E.      Grant Butterball treble damages and attorneys' fees;

F.      Order that Defendants pay the costs of this action;

G.      Order that all articles bearing the infringing mark be delivered up and destroyed;

H.      Grant any further equitable relief in order to enjoin the harm caused to Butterball;

I.      Grant Butterball prejudgment and post-judgment interest; and

J.      Grant such other and further relief as this Court deems just and equitable.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Butterball requests a jury trial on all issues so triable.

Dated: September 2, 2016    /s/ Thadford A. Felton
                Thadford A. Felton
                Greensfelder, Hemker & Gale, P.C.
                200 West Madison Street
                Suite 3300
                Chicago, IL 60606
                taf@greensfelder.com
                (312) 345-5023
                (312) 419-1930 (Fax)

                *Attorneys for Plaintiff Butterball, LLC*

27

**VERIFICATION**

I, William Klump, Chief Marketing Officer of Butterball, LLC, verify that I have read the foregoing Verified Complaint, and that the allegations made therein are true to the best of my knowledge, and that the allegations made upon information and belief are believed by me to be true.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on: September ⏐ , 2016

A notary public or or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of North Carolina )
County of __Wake__ )

On September ⏐ , 2016 before me __Lisa J. Groth__ , a notary public, personally appeared William Klump, who proved to me on the basis of satisfactory evidence to the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in her authorized capacity and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of North Carolina that the foregoing is true and correct.

WITNESS my hand and seal.

Signature _____

Lisa J. Groth
Notary Public
Wake County
North Carolina
My Commission Expires 2/8/2019